MIRIAM GORE, Employee v. MYRTLE/MUELLER, Employer, TRAVELERS INSURANCE COMPANY, Carrier

No. 396PA06

(Filed 7 December 2007)

## 1. Workers' Compensation— expiration of time limitations— equitable estoppel

The Industrial Commission did not err in a workers' compensation case by concluding that it had jurisdiction even though plaintiff failed to file either alleged incident within the two-year period required by N.C.G.S. § 97-24, because: (1) the two year limitation in N.C.G.S. § 97-24 has repeatedly been held to be a condition precedent to the right to compensation and not a statute of limitations; (2) a condition precedent, unlike subject matter jurisdiction, may be waived by the beneficiary party by virtue of its conduct; (3) it was entirely plausible for both defendant employer and plaintiff to believe that the entire process in completing the forms was not an exercise in futility, and that the form would be sent to the appropriate place; (4) the employer's human resources officer candidly conceded that she could not recollect her disposition of the forms; and (5) actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel.

## 2. Workers' Compensation— injury by accident—causation— medical records

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff suffered a compensable injury by accident, because: (1) plaintiff employee's medical records were stipulated into evidence by the parties, and as such, they represent competent evidence to support the Commission's findings of fact determining that there was a causal connection between plaintiff's injuries and her work; and (2) appellate courts are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.

Chief Justice PARKER dissenting in part and concurring in part.

Justice BRADY and Justice NEWBY join in the dissenting and concurring opinion.

**GORE v. MYRTLE/MUELLER**

[362 N.C. 27 (2007)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, 178 N.C. App. 561, 631 S.E.2d 892 (2006), reversing an Opinion and Award filed on 10 February 2005 by the North Carolina Industrial Commission. On 8 March 2007, the Supreme Court allowed defendants' conditional petition for discretionary review as to additional issues. Heard in the Supreme Court 10 September 2007.

*Brumbaugh, Mu & King, P.A., by Leah L. King, for plaintiff-appellant/appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Thomas M. Morrow and Dana C. Moody, for defendant-appellees/appellants.*

TIMMONS-GOODSON, Justice.

This case arises from proceedings before the North Carolina Industrial Commission ("Commission") and raises the two issues of (1) whether a party may be equitably estopped, in the absence of bad faith, from raising the two year filing requirement in N.C.G.S § 97-24 as an affirmative defense, and (2) whether the Commission's Opinion and Award is supported by competent evidence. We granted discretionary review under N.C.G.S. § 7A-31 and now answer both questions in the affirmative. The decision of the Court of Appeals is reversed.

## Factual Background

Evidence before the Commission tended to show that Miriam Gore ("Plaintiff") was employed by Myrtle-Mueller ("Defendant"), a manufacturer of office furniture, from 1985 to April 2000. During her employment, plaintiff worked as a case cleaning inspector performing random inspections until January 2000. She was later transferred to a station where she performed inspections on a full time basis. The inspections entailed pushing and pulling desks. On 12 January 2000, while attempting to assist a fellow employee, plaintiff slipped and fell on a patch of ice in the parking lot of defendant's premises ("January accident"). Plaintiff did not immediately fill out a formal report. However, she testified that her supervisor was aware of the incident. Defendant's human resources worker, Vera Walker ("Walker"), testified that she was aware of the incident, but did not fill out a report at the time of the accident. She recalled subsequently completing a report in May 2000.

On 31 March 2000 ("March accident"), plaintiff, engaged in pulling a desk through large steel doors, "felt a catch in her back." She visited her primary care physician, John D. Hodgson M.D., the same day, complaining of severe back pain. Dr. Hodgson took plaintiff out of work for two weeks. In subsequent proceedings, Walker recalled completing a report for the March accident, but could not recall the specific date she filled out the report.

Plaintiff and Walker completed a Form 18 Notice of Accident, for the March accident on 25 May 2000, although neither Walker nor plaintiff filed the form with the Commission. Walker testified that after completing the form, she assured plaintiff that she would check the Form 18 and "find out where it needs to go." On 26 May 2000, defendant filed a Form 61 Denial of Workers' Compensation Claim for the January accident with the Commission. The form made no reference to the March accident.

On 18 April 2000, plaintiff returned to Dr. Hodgson with continued complaints of back pain, as well as arthritic symptoms in her knees, hips, and joints. Following his examination, Dr. Hodgson diagnosed plaintiff with severe back pain and underlying severe osteoarthritis. He took X-rays of plaintiff's back that revealed Grade II spondylolisthesis at L5-S1 with marked disc narrowing. On 2 May 2000, Dr. Hodgson diagnosed plaintiff with back pain due to degenerative disc disease and spondylolisthesis. Dr. Hodgson indicated that plaintiff was 100 percent disabled due to back pain from degenerative disc disease and listed 26 April 2000 as plaintiff's last day of work.

Plaintiff visited Stephen J. Candela M.D., for a second opinion evaluation on 12 July 2000. Dr. Candela noted that plaintiff suffered from pain on her left side and left hip. He diagnosed plaintiff with low back pain syndrome and trochanteric bursitis. Plaintiff continued to see Dr. Candela until 26 April 2001.

On 20 June 2002, plaintiff visited a third physician, Louie E. Tsiktsiris M.D., of Carolina Arthritis Associates. Dr. Tsiktsiris determined that plaintiff suffered from degenerative arthritis of her neck and back, myofascial pain, and Grade IV spondylolisthesis of her lumbar spine. Plaintiff followed up on 5 July 2002 with Thomas Melin M.D., of Coastal Neurological Associates for a neurosurgical evaluation. Dr. Melin confirmed the diagnosis of L5-S1 spondylolisthesis with resultant back and leg pain and ordered an MRI of plaintiff's lumbar spine. The MRI scan was performed on 11 July 2002, and

revealed L5 spondylolysis with Grade II L5-S1 spondylolisthesis, as well as biforaminal stenosis.

The parties subsequently appeared before a deputy commissioner, who denied plaintiff's claim on 11 December 2003. Plaintiff appealed the denial to the Commission. The Commission reviewed the matter and reversed the deputy commissioner in an Opinion and Award filed on 10 February 2005. The Commission entered the following Findings of Fact pertinent to this appeal:

2. . . . [P]laintiff's back condition had been relatively stable during the period preceding January 12, 2000 and March 31, 2000.

3. On January 12, 2000, after plaintiff had clocked into her station, a co-worker informed her that another co-worker had slammed her hand in the trunk of her car in the parking lot. Consequently, plaintiff went to check on the condition of the injured coworker [sic]. The parking lot was icy and slick and plaintiff slipped and fell on her left shoulder, wrist, head, and back. . . . Plaintiff experienced pain in her wrist and head but did not seek medical treatment or report the incident. However, the plaintiff reasonably believed that her supervisor knew about the fall because of comments he made to her that day. Ms. Vera Walker, a human resources worker for defendant-employer, testified that she was aware of the plaintiff's fall and that Ms. Walker did not fill out an accident report.

. . . .

5. On 31 March 2000, the plaintiff felt a catch or pop in her back as she pulled a desk. On this date she went to Dr. Hodgson, her primary care physician and complained about back pain. Plaintiff was treated conservatively with medication and removed from work for two weeks.

. . . .

8. On 25 May 2000 the plaintiff and Vera Walker completed a Form 18 and memo acknowledging notice of the accident to employer and the claim of the employee. Vera Walker recalled filling out the forms but could not recall what she did with the forms, but the Form 18 was not received by the Industrial Commission. The plaintiff was under the reasonable belief and reasonably relied on her perception that the forms would be properly filed with the Industrial Commission.

. . . .

**GORE v. MYRTLE/MUELLER**

[362 N.C. 27 (2007)]

10. On 6 July 2000 plaintiff was having significant back pain and Dr. Hodgson referred plaintiff to Dr. Candella. Plaintiff reported to Dr. Candella a history of having significant back pain after moving desks. Dr. Candella treated plaintiff conservatively with injections of Depomedrol. This treatment had some success but plaintiff's back pain returned with activity.

. . . .

14. Sometime after plaintiff's retirement, approximately 5 May 2000, plaintiff reported her 31 March 2000 back injury to defendant-employer and met with Ms. Vera Walker who was acting human resources manager. Ms. Walker indicated that plaintiff would receive short-term disability, which plaintiff did receive. Ms. Walker explained that she would discuss workers' compensation benefits with the home office. Thereafter, defendant-employer filed a Form 19 with the Industrial Commission, which was dated May 24, 2000 and received by the Commission on either June 5 or 8, 2000. The Form 19 indicates a date of injury of 12 January 2000 and a mechanism of injury of a slip and fall on the ice in the parking lot.

15. Drs. Hodgson and Melin testified that the traumas described by plaintiff of 12 January 2000 and 31 March 2000 aggravated her preexisting, previously asymptomatic back condition.

16. Dr. Hodgson testified in his deposition that plaintiff's 12 January 2000 injury "could have exacerbated the—pain that [plaintiff] was experiencing or could have caused the pain."

17. The plaintiff has been unable to work since 26 April 2000.

Consequently, the Commission entered its Conclusions of Law, which stated, *inter alia*:

1. Plaintiff sustained a compensable injury by accident arising out of and as a direct result of her employment with defendant in that she suffered specific traumatic incidents on 12 January 2000 and 31 March 2000. The plaintiff has been disabled from any work since 26 April 2000 due to the compensable injury.

2. Plaintiff's workplace injuries of 12 January 2000 and 31 March 2000 aggravated a preexisting, nondisabling condition.

3. The plaintiff reasonably relied on the defendant-employer to file the Form 18 completed by the plaintiff and the defendant-

GORE v. MYRTLE/MUELLER

[362 N.C. 27 (2007)]

employer's human resources worker. The defendants are thereby equitably estopped to rely on N.C.G.S. § 97-24 to bar the plaintiff's claim.

(citations omitted.) The Commission consequently awarded plaintiff disability compensation and medical treatment.

### Defendants' Arguments

Defendants appealed to the Court of Appeals, raising two issues. First, defendants argued, the Commission erred by concluding that it had jurisdiction because plaintiff failed to file either alleged incident within the two year period required by statute. They argued that plaintiff did not file a complaint for the 12 January 2000 incident until 31 January 2002, more than two years after the incident. Defendants also asserted that the Commission first received notice of the 31 March 2000 accident when the parties filed a Pre-Trial agreement on 18 October 2003, also two years after the incident. Though defendants conceded that a Form 19 and a Form 61 regarding the January incident had been filed in 2000, within the time limit, they argued that this filing did not constitute a filing of the claim within the meaning of N.C.G.S. § 97-24.

Second, defendants contended, the Commission erred by concluding that plaintiff suffered from a compensable injury by accident under the Workers' Compensation Act. The Court of Appeals agreed with defendants' contentions and set aside the Opinion and Award of the Commission in a unanimous, unpublished opinion entered on 18 July 2006. *Gore v. Myrtle/Mueller*, 178 N.C. App. 561, 631 S.E.2d 892 (2006) (2006 N.C. App. LEXIS 1577 (July 18, 2006)) (unpublished) (No. COA05-988). Pursuant to N.C.G.S. § 7A-31, we granted discretionary review to plaintiff and allowed defendants' conditional petition for discretionary review. *Gore v. Myrtle/Mueller*, 361 N.C. 352, 644 S.E.2d 7 (2007).

### Questions Presented

Upon granting plaintiff's petition for discretionary review and defendant's conditional petition for discretionary review, we address the same issues decided by the Court of Appeals. First, we review our jurisprudence to determine if estoppel can be invoked to prevent a party from asserting the two year filing requirement of N.C.G.S. § 97-24 in proceedings before the Commission where no bad faith has been shown. Second, we review the record to determine if the Opinion and Award of the Commission was supported by competent evidence. We answer both questions in the affirmative.

## I. Equitable Estoppel

[1] To determine whether equitable estoppel is applicable in this case, we begin by reviewing our general equitable estoppel jurisprudence. We then proceed to review case law in the specific context of workers' compensation. Finally, we evaluate this case in the light of our estoppel jurisprudence.

### A. Estoppel in General

We have previously defined equitable estoppel as "the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might perhaps have otherwise existed . . . as against another person who in good faith relied upon such conduct." *Washington v. McLawhorn*, 237 N.C. 449, 454, 75 S.E.2d 402, 405 (1953) (internal quotation marks omitted) (quoting *Am. Exch. Nat'l Bank v. Winder*, 198 N.C. 18, 20, 150 S.E. 489, 491 (1929) (citations omitted)).

Equitable estoppel arises when one party, by his acts, representations, or silence when he should speak, intentionally, or through culpable negligence, induces a person to believe certain facts exist, and that person reasonably relies on and acts on those beliefs to his detriment. *Long v. Trantham*, 226 N.C. 510, 513, 39 S.E.2d 384, 387 (1946) (citations omitted). There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply. *Duke Univ. v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 692 (1987) (citing *Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 181 S.E.2d 588 (1971)).

As we have recently reiterated, "the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (citations omitted). "Equitable estoppel prevents one party from taking inconsistent positions in the same or different judicial proceedings, and 'is an equitable doctrine designed to protect the integrity of the courts and the judicial process.' " *State v. Taylor*, 128 N.C. App. 394, 400, 496 S.E.2d 811, 815, *aff'd per curiam*, 349 N.C. 219, 504 S.E.2d 785 (1998) (citation omitted).

[T]he essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are

otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially

*Hawkins v. M & J Fin. Corp.*, 238 N.C. 174, 177-78, 77 S.E.2d 669, 672 (1953) (citations omitted). In evaluating the merits of the estoppel argument in the instant case against these criteria, we begin by examining the statutory framework under which plaintiffs bring workers' compensation claims.

## B. Estoppel In Workers' Compensation

The time limitation at issue is set out in N.C.G.S. § 97-24. The statute provides in pertinent part:

(a) The right to compensation under this Article shall be forever barred unless (i) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission or the employee is paid compensation as provided under this Article within two years after the accident or (ii) a claim or memorandum of agreement as provided in G.S. 97-82 is filed with the Commission within two years after the last payment of medical compensation when no other compensation has been paid and when the employer's liability has not otherwise been established under this Article.

N.C.G.S. § 97-24(a) (2005). We have previously explained the context of the workers' compensation claim: "The claim is the right of the employee, at his election, to demand compensation for such injuries as result from an accident." *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 663, 75 S.E.2d 777, 780 (1953). In order to invoke this right, however, the worker "must notify his employer within thirty days after the accident, and if they cannot agree on compensation, he, or someone on his behalf, must file a claim with the Commission within [the statutory period] after the accident, in default of which his claim is barred." *Id.* (internal citations omitted) If the employee follows this

procedure, "the jurisdiction of the Commission, as a judicial agency of the State, is invoked." *Id.* (citations omitted).

If the jurisdiction is not invoked in this manner, then the employee has limited options. In the general context of workers' compensation, this Court for several decades expressly left unresolved the question of "whether under all circumstances a party to a proceeding before the Industrial Commission can, or cannot, be estopped to attack its jurisdiction over the subject matter. . . ." *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 89, 92 S.E.2d 673, 677 (1956). In the particular context of the time requirement set forth in N.C.G.S. § 97-24 however, this Court has expressly held that the employer's conduct can waive the statute's timing restrictions. *See Biddix*, 237 N.C. at 665, 75 S.E.2d at 781. An examination of *Biddix* is instructive in outlining the particular parameters of the equitable estoppel doctrine in the context of our workers' compensation jurisprudence.

### 1. *Biddix*

The employee in *Biddix* was injured on the job. *Id.* at 661, 75 S.E.2d at 778. The employer, on its own volition, paid some of the medical bills. *Id.* at 661, 75 S.E.2d at 779. Consequently, the employee delayed bringing the matter before the Industrial Commission. When the employee finally did so, the deputy commissioner held that the claim was time barred. *Id.* The Commission reversed "on the ground that the defendants, by their conduct, lulled plaintiff into a sense of security and are now estopped to plead the statute, G.S. § 97-24." *Id.*

We reversed, citing the example of the Good Samaritan, and explaining that the employer's willingness to assist the employee with his bills should not be held against it for public policy reasons. The Court reasoned that "if a court should so hold, it would tend to stop, instead of encourage, one injuring another from giving aid to the sufferer. It would be a brutal holding, contrary to all sense of justice and humanity." 237 N.C. at 664, 75 S.E.2d at 781 (citations and internal quotation marks omitted).

However, we then specifically went on to explain that the reversal was predicated on the factual backdrop of the case and that the general rule was that the law of estoppel applied:

It must not be understood that we hold an employer may not by his conduct waive the filing of a claim within the time required

by law. *The law of estoppel applies in compensation proceedings as in all other cases.* We merely hold that the facts here appearing, including those found by the full Commission, are insufficient to invoke the doctrine in this case.

*Id.* at 665, 75 S.E.2d at 781 (emphasis added) (citations omitted).

Therefore, since *Biddix*, we have upheld the principle that estoppel may be invoked to prevent the employer from asserting the time limitation in N.C.G.S. § 97-24 as an affirmative defense. This principle is consistent with the general guideline that the Workers' Compensation Act requires liberal construction to accomplish the legislative purpose of providing compensation for injured employees, and that this overarching purpose is not to be defeated by the overly rigorous "technical, narrow and strict interpretation" of its provisions. *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 452, 85 S.E.2d 596, 599 (1955) (quoting *Johnson v. Asheville Hosiery Co.*, 199 N.C. 38, 153 S.E. 591 (1930)). It is also consistent with the rule followed in the overwhelming majority of jurisdictions that employer fault, regardless of whether it is intentional, will excuse the untimely filing of a workers compensation claim. *See Larson's Workers' Compen-sation Law*, 7 § 126.09D[1], and cases cited therein; *id.* at 126.09[1] (explaining that when a claimant is "lulled into a sense of security by statements of employer . . . that the claimant 'will be taken care of' . . . . the lateness of the claim has ordinarily been excused"); Blair, *Workmen's Compensation Law*, § 18-2 (noting that a "misleading statement which lulls an employee into a false sense of security that what must be done . . . will be taken care of for him[] will also, in most instances, excuse his failure to act timely").

## 2. Estoppel Since *Biddix*

After *Biddix*, the Court of Appeals addressed the issue of whether the principle of estoppel could prevent a party from invoking the statutory two year provision in *Belfield v. Weyerhaeuser Co.*, 77 N.C. App. 332, 335, 335 S.E.2d 44, 46 (1985).

The plaintiff had worked at Weyerhaeuser's sawmill for thirty years until his workplace injury. *Id.* at 332-33, 335 S.E.2d at 44-45. Following the accident, his health declined. *Id.* at 333, 335 S.E.2d at 45. As his health declined, the plaintiff sought help from Brenda Howell, a secretary at the mill. *Id.* Ms. Howell told the plaintiff she

would take care of his paperwork.[1] *Id.* However, she never took any action, and the plaintiff never received any benefits. *Id.* The plaintiff finally obtained counsel and filed suit six years after the accident. *Id.* In affirming the Commission's order that the defendants were estopped from pleading the absence of jurisdiction pursuant to Section 97-24, *Belfield* laid down the general rule which has since governed: "We hold that a party may be equitably estopped from asserting the time limitation in G.S. 97-24 as a bar to jurisdiction." *Id.* at 335, 335 S.E.2d at 46.

For over twenty-two years, the *Belfield* rule has permeated North Carolina workers' compensation jurisprudence.[2] We have been particularly reluctant to interfere with past precedents when, as here, litigants have arranged their affairs and "rights have become vested which will be seriously impaired if the rule thus established is reversed." *Hill v. Atlantic & N.C. R. Co.*, 143 N.C. 542, 573, 143 N.C. 408, 529, 55 S.E. 854, 866 (1906). *See e.g., State v. Holmes*, 361 N.C. 410, 413, 646 S.E.2d 353, 355 (2007) (noting that the holding was "consistent with three decades of Court of Appeals precedent").

*Belfield* and its model of equitable estoppel have acquired similar gravity in the area of workers' compensation. *See, e.g., Craver v. Dixie Furn. Co.*, 115 N.C. App. 570, 578, 447 S.E.2d 789, 794 (1994) (quoting *Belfield*, 77 N.C. App. at 337, 335 S.E.2d at 47); *Reinhardt v. Women's Pavilion, Inc.*, 102 N.C. App. 83, 87, 401 S.E.2d 138, 141 (1991) (citing *Belfield*)).

*Craver* explained the underlying policy rationale for the *Belfield* rule:

> The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that 'he will be taken care of' *or that his claim has been filed for him* or that a claim will not be necessary because he would be paid compensation benefits in any event. When such

---

1. We note that Ms. Walker's verbal assurances that she would "find out where it [the form] needs to go," combined with the Form 61 bearing the notation that "[t]he original of this form shall be sent to: Industrial Commission" are at least as persuasive in this case as Ms. Howell's words in *Belfield* that she would "take care of" the plaintiff's paperwork.

2. As of 10 September 2007, the Commission had cited *Belfield* in thirty-seven opinions.

**GORE v. MYRTLE/MUELLER**

[362 N.C. 27 (2007)]

facts are established by the evidence, the lateness of the claim has ordinarily been excused.

115 N.C. App. at 578, 447 S.E.2d at 794 (quoting *Belfield*, 77 N.C. App. at 336, 335 S.E.2d at 49) (citation omitted) (emphasis added).[3]

In contrast, defendants urge this Court to resurrect an antiquated approach extinguished by modern estoppel principles in all but a few jurisdictions. As a leading treatise explains, modern application of estoppel and waiver in the present context serves "as an antidote to the earlier approach, which was the highly conceptual one of saying that timely claim (and sometimes even notice) was 'jurisdictional[.]'" *Larson's*, 7 § 126.13[1]. Defendants' argument tracks this "jurisdictional" approach, and relies entirely on cases decided before the adoption of modern principles of waiver and estoppel designed to ameliorate its harsh effects. The overwhelming majority of modern cases "belie[] the present validity of the ['jurisdictional'] idea," however, which continues to survive in only a tiny minority of jurisdictions amidst strong criticism. *See, e.g., id.* (describing the minority rule as "curious word-magic" designed to exalt the statutory claims' filing requirement as "a defense outside the reach of waiver, estoppel, or anything else"). To be sure, *Biddix* and *Belfield* have made clear that this outdated procedural hurdle has no place in our modern jurisprudence.

In this context, we underscore that the two year limitation in N.C.G.S. § 97-24 has repeatedly been held to be a condition precedent to the right to compensation and not a statute of limitations. *Montgomery v. Horneytown Fire Dep't*, 265 N.C. 553, 555, 144 S.E.2d 586, 587 (1965) (per curiam) (citations omitted). We have long held that a condition precedent, unlike subject matter jurisdiction, may be waived by the beneficiary party by virtue of its conduct. *See, e.g., Johnson & Stroud v. R.I. Ins. Co.*, 172 N.C. 190, 195-96, 172 N.C. 142, 147-48, 90 S.E. 124, 127 (1916); *see also Larson's*, 7 § 126, Scope ("The right to assert the statutory bar [as to the filing of a claim for compensation] can, in most jurisdictions, be lost by waiver[.]"). Therefore, by their actions, defendants could waive the two year condition precedent laid out in N.C.G.S. § 97-24.

---

3. We also observe that it is undisputed that the forms concern the March accident were filed in a timely manner. However, since the Commission did not rely on this for its ruling, we do not address the issue.

## C. Application of Estoppel to the Case at Bar

Having established the general permissibility of estoppel under our workers' compensation law, we now address its applicability in the instant case. The essential elements of estoppel are (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must (1) lack the knowledge and the means of knowledge as to the real facts in question; and (2) have relied upon the conduct of the party sought to be estopped to his prejudice. *In re Will of Covington*, 252 N.C. 546, 549, 114 S.E.2d 257, 260 (1960). In challenging the applicability of estoppel to the case at bar, defendants raise two main arguments.

First, defendants argue that they made no representation that they would take care of the claim for plaintiff and that plaintiff could therefore not rely on their conduct to her detriment. In the instant case, plaintiff specifically argued, and the Commission agreed, that she had filled out the forms with defendant's human resources officer, who subsequently lost them, to plaintiff's detriment. This is reflected in the Commission's Finding of Fact Number 8:

> On 25 May 2000 the plaintiff and Vera Walker completed a Form 18 and memo acknowledging notice of the accident to employer and the claim of the employee. Vera Walker recalled filling out the forms but could not recall what she did with the forms, but the Form 18 was not received by the Industrial Commission. The plaintiff was under the reasonable belief and reasonably relied on her perception that the forms would be properly filed with the Industrial Commission.

This finding of fact is supported by, among other competent evidence, testimony and a contemporaneous letter from Ms. Walker. It fulfills the requirements of equitable estoppel, and is conclusive and binding. *See Forbis v. Neal*, —— N.C. ——, ——, 649 S.E.2d 382, 387-88 (2007) (citations omitted) (Whether representations were "reasonably calculated to deceive", "made with intent to deceive"; whether they did "in fact deceive"; and whether reliance upon the representation was reasonable are questions of fact to be determined by the fact finder).

Though determining reliance is an issue of fact, *id.*, we note in passing that it was entirely plausible for both defendant-employer

and plaintiff to believe that the entire process in completing the forms was not an exercise in futility, and that the form would be sent, in Ms. Walker's words, "where it needs to go." Indeed, Ms. Walker candidly conceded that she could not recollect her disposition of the forms. These facts satisfy the requirements outlined above to invoke equitable estoppel, thereby resolving the first issue.

Next, defendants argue that estoppel is inapplicable because there is no showing that they acted maliciously or in bad faith. In applying the doctrine of equitable estoppel however, as noted above, we have explicitly held that "[a]ctual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of Estoppel." *Watkins v. Central Motor Lines, Inc.*, 279 N.C. 132, 139, 181 S.E.2d 588, 593 (1971). Indeed, to the contrary:

> [A] party may be estopped to deny representations made when he had no knowledge of their falsity, or which he made without any intent to deceive the party now setting up the estoppel. . . . [T]he fraud *consists in the inconsistent position subsequently taken,* rather than in the original conduct. It is the subsequent inconsistent position, and not the original conduct that operates to the injury of the other party.

*Hamilton v. Hamilton*, 296 N.C. 574, 576-77, 251 S.E.2d 441, 443 (1979) (emphasis added) (alterations in original) (citation omitted) (internal quotation marks omitted). The lack of bad faith is therefore not a bar to invoking equitable estoppel.

In light of these principles, we hold that (1) the requirements of equitable estoppel are met here, even without a showing of bad faith or malice, and (2) the doctrine of equitable estoppel can override the two year time period enunciated in N.C.G.S. § 97-24.

## II. Competent Evidence

[2] We next determine whether the Opinion and Award of the Commission was adequately supported by competent evidence. Appellate review of an award from the Commission is generally limited to two issues: (1) whether the findings of fact are supported by competent evidence; and (2) whether the conclusions of law are justified by the findings of fact. *Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006) (citations omitted). Under our Workers' Compensation Act, "the Commission is the fact finding body." *Brewer v. Powers Trucking Co.*, 256 N.C. 175, 182, 123 S.E.2d 608, 613 (1962). "The Commission is the sole judge of the credibility

of the witnesses and the weight to be given their testimony." *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965). Thus, on appeal, appellate courts do "not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Id.* at 434, 144 S.E.2d at 274. Reviewing courts do not function as appellate fact finders. *Rose v. City of Rocky Mt.*, 180 N.C. App. 392, 399, 637 S.E.2d 251, 256 (2006), *disc. rev. denied*, 361 N.C. 356, 644 S.E.2d 232 (2007).

Since we have previously analyzed the factual and procedural background of plaintiff's claim, the only outstanding issue is whether there is a causal connection between the workplace incidents and plaintiff's subsequent illnesses. The Court of Appeals' concerns were premised entirely on its assessments of the deposition testimonies of the doctors involved. Its opinion states: "Upon review of the record, the deposition testimonies of Dr. Hodgson and Dr. Melin were based merely upon speculation and conjecture, and were not sufficiently reliable to qualify as competent evidence on issues of medical causation." *See Gore v. Myrtle/Mueller*, 178 N.C. App. 561, 631 S.E.2d 892 (2006) (2006 N.C. App. LEXIS 1577 (July 18, 2006)) (unpublished) (No. COA05-988).

However, our review of the evidence in the record reveals that it contains considerable medical records in addition to the testimony referenced by the Court of Appeals. These records were stipulated into evidence by the parties. As such, they represent competent evidence to support the Commission's findings of fact determining that there was a causal connection between plaintiff's injuries and her work. An examination of the records shows that they include, among other materials, the following indicia supporting the Industrial Commission's determination:

1. A 2 May 2000 note by Dr. Hodgson noting that plaintiff's "back pain began @ work in January of 2000."

2. A second note indicating that plaintiff is "100% disabled due to back pain."

3. A progress note showing plaintiff's diagnosis as "BACK PAIN DUE TO DEGENERATIVE DISC DISEASE AND SPONDYLOLIS-THESIS, DEFINITELY WORK RELATED ONSET WITH UNDER-LYING CHRONIC ETIOLOGY." The note also indicated that: "She

does relate that her back was not bothering her until January, 2000 when she was put on heavier duty work at the plant."

The Commission's findings of fact may only be set aside in the complete absence of competent evidence to support them. *Click v. Pilot Freight Carriers Inc.*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980). We hold that the above materials constitute competent evidence to support the Commission's findings that plaintiff "sustained a compensable injury by accident arising out of and as a direct result of her employment with defendant in that she suffered specific traumatic incidents" and that her workplace injuries "aggravated a preexisting, nondisabling condition." Since appellate courts are "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law," *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000) (citing *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998)), our review must stop there.

For the foregoing reasons, the Court of Appeals decision reversing the Commission's Opinion and Award is reversed.

REVERSED.

Chief Justice PARKER dissenting in part; concurring in part.

In my view the majority's reliance on *Biddix v. Rex Mills, Inc.*, 237 N.C. 660, 75 S.E.2d 777 (1953), to support its holding that estoppel is applicable is misplaced. In *Biddix*, the accident giving rise to the plaintiff's claim for benefits occurred on 15 June 1950. *Id.* at 661, 75 S.E.2d at 778. On 12 September 1951, the plaintiff wrote a letter to the Industrial Commission requesting a hearing; the letter was received by the Commission on 14 September 1951. *Id.* at 661, 75 S.E.2d at 779. Prior to this letter, the plaintiff had filed no claim with the Commission. *Id.* Defendant employer had paid for the plaintiff's medical treatment, and it was stipulated that the last payment was made 16 January 1951. *Id.* The hearing commissioner found as fact and concluded as a matter of law that the plaintiff's claim was barred by N.C.G.S. § 97-24(a), which at that time required that the claim be filed within one year of the injury. *Id.* On appeal to the Full Commission, the majority of the Commission concluded the following:

(1) "that by the enactment of Chapter 823, Session Laws of 1947, it was the legislative intent to give an injured employee twelve months from the date of the last payment of bills for medical or other treatment, in cases in which only medical or other treatment bills are paid, within which to request a review of his case for the purpose of ascertaining his rights under the Compensation Act;" (2) that the payment of the medical bills, the reports thereof, and the failure to enter any formal denial of liability "constitute waiver of the requirement for making or filing timely claim, such recognition of liability by the employer eliminating the question of whether a claim for compensation on (*sic*) has been made;" and, (3) "in all events, payment of medical bills under the provisions of the Compensation Act over an extended period of time under circumstances revealed by this record is calculated to lull an injured employee into a false sense of security, and lapse of time ought not to bar the employee's claim unless such be the clear mandate of the law."

*Biddix*, 237 N.C. at 661-62, 75 S.E.2d at 779. The Full Commission reversed the deputy commissioner and set the matter for hearing on its merits. On appeal by the defendants to the superior court, the trial court affirmed the order of the Industrial Commission. *Id.* at 662, 75 S.E.2d at 779.

On appeal by the defendants to this Court, the Court noted that the Commission, in reaching its conclusion that the defendants were estopped to plead the bar of N.C.G.S. § 97-24, "had resort[ed] to matters appearing in the files of the Commission which constitute no part of the evidence in the case or the record in the cause." *Id.* After discussing the jurisdiction of the Industrial Commission, this Court noted that "[r]ecourse may not be had to records, files, evidence, or data not . . . presented to the court for consideration" and held that the Commission erred "in basing its decision on information it says its files do or do not disclose." *Id.* at 663, 75 S.E.2d at 780. This Court then discussed the medical payments, holding that the voluntary payment of medical expenses did not constitute an admission of liability. "It cannot be said that when an employer does what the Act requires or permits him to do, he thereby perforce admits liability and waives the protective provisions of a statute enacted in his behalf. G.S. 97-25." *Id.* at 664, 75 S.E.2d at 780. The Court then addressed what it calls the crux of the controversy, namely whether the Session Law referenced by the Commission, which amended N.C.G.S. § 97-47, had any applicability to the plaintiff's claim. The

Court concluded that the "amendatory Act has no relation to the filing of original claims for compensation or the time within which such claims are to be filed. It amends G.S. 97-47 and it relates exclusively to the time within which an employee may file a petition for a review of an award theretofore made." *Id.* at 665, 75 S.E.2d at 781 (citations omitted). This Court reversed the trial court. *Id.* at 666, 75 S.E.2d at 782.

In the discussion of the payment of medical bills, this Court analogized the employer's voluntary payment of medical bills to the act of mercy by the Good Samaritan and noted that no one has suggested that by his conduct the Good Samaritan impliedly admitted that he was liable for the injuries the beaten man sustained. This Court then made the following statement, which in the context of the decision is *obiter dictum*:

> It must not be understood that we hold an employer may not by his conduct waive the filing of a claim within the time required by law. The law of estoppel applies in compensation proceedings as in all other cases. We merely hold that the facts here appearing, including those found by the full Commission, are insufficient to invoke the doctrine in this case. *Wilson v. Clement Co., supra; Lilly v. Belk Brothers, supra; Jacobs v. Manufacturing Co.,* 229 N.C. 660, 50 S.E.2d 738; *Lineberry v. Town of Mebane, supra; Whitted v. Palmer-Bee Co., supra.*

*Id.* at 665, 75 S.E.2d at 781.

Interestingly, *Lineberry v. Town of Mebane,* 218 N.C. 737, 12 S.E.2d 252 (1940), and *Whitted v. Palmer-Bee Co.,* 228 N.C. 447, 46 S.E.2d 109 (1948), do not mention estoppel. Each of the other cases, *Wilson, Lilly,* and *Jacobs,* determined that the evidence and facts found by the Commission did not support application of the doctrine. However, language in *Wilson v. E.H. Clement Co.,* 207 N.C. 541, 177 S.E. 797 (1935) is instructive.

In *Wilson,* the plaintiff argued that C.S., 8081 (ff), current N.C.G.S. § 97-24, is a statute of limitations that could be waived by the defendants and that by their conduct the defendants lulled the plaintiff into inaction and were thereby estopped to assert the bar of the statute. *Id.* at 543, 177 S.E. at 798. The defendants argued that the statute is not a statute of limitations, but a condition annexed to the cause of action which cannot be waived by the parties. *Id.* The Court stated the following:

It is unnecessary to decide whether C.S., 8081 (ff), is a condition precedent or a statute of limitations.

Of course, if it is a condition annexed to the cause of action of similar character to C.S., 160, obviously the claimant was entitled to no compensation. Conceding, but not deciding, that the statute is one of limitations, is there any evidence upon which to base the doctrine of equitable estoppel? The nature of such estoppel and the elements thereof, as heretofore declared and applied, were stated in *Franklin v. Franks*, 205 N.C. 96, [170 S.E. 113 (1933)]. The Court said: "The general rule is that a party may either by agreement or conduct estop himself from pleading the statute of limitations as a defense to an obligation. . . . To constitute such estoppel, there must be more than a mere delay or indulgence at the request of the debtor. There must be an express agreement not to plead the statute, or such conduct on the part of the debtor as would make it inequitable for him to do so.

*Id.* (citations omitted).

Two years later in *Winslow v. Carolina Conference Ass'n of The Seventh Day Adventists & Lumbermen's Mutual Casualty Co.*, 211 N.C. 571, 191 S.E. 403 (1937), this Court put the condition precedent versus statute of limitations debate under N.C.G.S. § 97-24 to rest. The Court said:

After careful consideration of the question, which has not been heretofore decided by this Court, we are of the opinion and hold that the provisions of section 24 constitute a condition precedent to the right to compensation, and not a statute of limitation. For this reason, where a claim for compensation under the provisions of the North Carolina Workmen's Act has not been filed with the Industrial Commission within one year after the date of the accident which resulted in the injury for which compensation is claimed, or where the Industrial Commission has not acquired jurisdiction of such claim within one year after the date of such accident (see *Hardison v. Hampton*, 203 N.C. 187, 165 S.E. 355), the right to compensation is barred.

*Id.* at 582, 191 S.E. at 410. This holding has not been overruled and has been consistently repeated in this Court's opinions applying N.C.G.S. § 97-24. *In McCrater v. Stone & Webster Engineering Corp.*, 248 N.C. 707, 104 S.E.2d 858 (1958), this Court, quoting from 34 Am. Jur., *Limitation of Actions* § 7, stated:

GORE v. MYRTLE/MUELLER

[362 N.C. 27 (2007)]

"A statute of limitations should be differentiated from conditions which are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right."

*Id.* at 709, 104 S.E.2d at 860. The Court then said:

And so it is, under application of the principles discussed and applied in *Winslow v. Carolina Conference Association, supra* and *Lineberry v. Mebane, supra,* that the plaintiff's inchoate right to compensation arose by operation of law on the date of the accident. But his substantive right to compensation was not fixed by the simple fact of injury arising out of and in the course of his employment. The requirement of filing claim within the time limited by G.S. 97-24 was a condition precedent to his right to compensation. Necessarily, then, the element of filing claim within the time limited by the statute was of the very essence of the plaintiff's right to recover compensation.

*Id.* As a condition precedent, application of the statute is not subject to avoidances available in the enforcement of an ordinary statute of limitation. *See Wilson,* 207 N.C. at 543, 177 S.E. at 798. By filing a claim with the Industrial Commission within the time prescribed by N.C.G.S. § 97-24, the injured worker invokes the jurisdiction of the Industrial Commission.

If he wishes to claim compensation, he must notify his employer within thirty days after the accident, G.S. 97-22, 23, and if they cannot agree on compensation, he, or someone on his behalf, must file a claim with the Commission within twelve months [now twenty-four months] after the accident, in default of which his claim is barred. G.S. 97-24. Thus the jurisdiction of the Commission, as a judicial agency of the State, is invoked.

*Biddix,* 237 N.C. at 663, 75 S.E.2d at 780 (citations omitted). Filing of the claim is a condition precedent to jurisdiction of the Industrial Commission over the claim; thus, jurisdiction over the claim "cannot be obtained by consent of the parties, waiver, or estoppel." *Hart v.*

*Thomasville Motors, Inc.*, 244 N.C. 84, 88, 92 S.E.2d 673, 676 (1956) (citations omitted). In the fifty-four years since the *dictum* in *Biddix* was published, this Court has never applied estoppel in the context of N.C.G.S. § 97-24. Admittedly, this Court has quoted the language from *Biddix* that estoppel is applicable in workers' compensation cases, but in reference to another statute or another issue. *See, e.g., Willis v. J.M. Davis Indus.*, 280 N.C. 709, 186 S.E.2d 913 (1972) (review of award based on changed conditions under N.C.G.S. § 97-47); *Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 181 S.E.2d 588 (1971) (same); *Aldridge v. Foil Motor Co.*, 262 N.C. 248, 136 S.E.2d 591 (1964) (question of whether plaintiff employee was covered under the employer's workers' compensation insurance policy); and *Ammons v. Z.A. Sneeden's Sons, Inc.*, 257 N.C. 785, 127 S.E.2d 575 (1962) (change of conditions under N.C.G.S. § 97-47).

Moreover, the majority's reliance on *Belfield v. Weyerhaeuser Co.*, 77 N.C. App. 332, 335 S.E.2d 44 (1985), is, in my opinion, similarly misplaced. This Court is not bound by the decisions of the Court of Appeals. Contrary to the assertion in that opinion, (one in which I must share blame), the distinction between a condition precedent and a statute of limitations with respect to the application of the doctrine of estoppel to the filing requirement in N.C.G.S. § 97-24 had not resulted in judicial uncertainty, nor had this Court left the issue specifically unresolved. *Id.* at 334-35, 335 S.E.2d at 45-46. In *Winslow*, this Court's opinion set out the Commission's findings of fact and conclusions of law in full, 211 N.C. at 573-75, 191 S.E. at 404-05, which clearly raised the issue and explained that if the filing requirement was a condition precedent, then estoppel would not apply, but if the filing requirement was a statute of limitations, estoppel would be applicable. The trial court in *Winslow* had similarly stated that if the filing requirement was a statute of limitations, the defendant would be estopped to attack the jurisdiction of the Industrial Commission. *Id.* at 581, 191 S.E. at 409. As noted above, this Court held that the filing requirement was a condition precedent. *Id.* at 582, 191 S.E. at 410. The question of whether estoppel could be applied to overcome the bar of a statute of limitations but not to overcome the failure to satisfy a condition precedent was settled law. 37 C.J. *Limitations of Actions* § 5, p. 686 (1925). The language from *Hart* that "[i]t is not necessary for us to decide whether under all circumstances a party to a proceeding before the Industrial Commission can, or cannot, be estopped to attack its jurisdiction over the subject matter, for the reason that under the facts of this case no such estoppel arises" did not leave unresolved the question of the application of estoppel in the

context of N.C.G.S. § 97-24. *Hart*, 244 N.C. at 89, 92 S.E.2d at 677. The determinative jurisdictional issue in *Hart* was whether the injured party was an employee or an independent contractor, thereby bringing into question the Industrial Commission's authority to approve the settlement agreement between the plaintiff and the defendant.

The fact that the Court of Appeals' *Belfield* opinion has been published for twenty-two years and cited by the Industrial Commission is not, in my view, adequate reason for this Court to accept that decision and disregard our prior precedent that jurisdiction cannot be conferred by consent of the parties, waiver, or estoppel. *Id.* at 88, 92 S.E.2d at 676, *see also Morse v. Curtis*, 276 N.C. 371, 375, 172 S.E.2d 495, 498 (1970). In my view equitable estoppel is not applicable in this case.

Finally, on the question of jurisdiction, the Court of Appeals' majority in this case was, in my judgment, correct in its determination that plaintiff had, by sending the 26 November 2001 letter and Form 33 request for hearing, satisfied the filing requirement of N.C.G.S. § 97-24. Plaintiff testified that she mailed the letter and form in an envelope with proper postage addressed to the Industrial Commission. While the Commission made no finding on this point, the law is that evidence of the mailing of a letter, properly addressed and with proper postage, raises a rebuttable presumption that the letter was received by the intended recipient. *Beard v. Southern Ry. Co.*, 143 N.C. 136, 140, 55 S.E. 505, 506 (1906). Defendant presented no evidence to refute plaintiff's testimony on this point. Whether this letter and form were mailed is a jurisdictional fact. As this Court has said:

> Findings of jurisdictional fact by the Industrial Commission . . . are not conclusive upon appeal even though supported by evidence in the record. A challenge to jurisdiction may be made at any time. When a defendant employer challenges the jurisdiction of the Industrial Commission, any reviewing court, including the Supreme Court, has the duty to make its own independent findings of jurisdictional facts from its consideration of the entire record.

*Dowdy v. Fieldcrest Mills, Inc.*, 308 N.C. 701, 705, 304 S.E.2d 215, 218 (1983) (citations omitted). In her 26 November 2001 letter and on her Form 33, plaintiff stated that she is seeking benefits for the incident in March 2000, not the January 2000 accident. Of note, on the Form 33, plaintiff indicates that she had consulted an attorney. As of 26

GORE v. MYRTLE/MUELLER

[362 N.C. 27 (2007)]

November 2001, plaintiff was still within the two-year filing period for her claim arising out of the 12 January 2000 fall on the ice. Plaintiff having failed to file a claim for this incident within the required time period, the Industrial Commission did not have jurisdiction over the 12 January 2000 accident. The Industrial Commission did, however, have jurisdiction over plaintiff's claim for injuries arising out of the 31 March 2000 incident.

On the issue of causation, with respect to the 31 March 2000 incident, I am of the opinion that plaintiff's testimony that while pushing or moving a desk she experienced a catch in her back and that she consulted her doctor that day for back pain was sufficient to support a finding that she experienced a "specific traumatic incident" within the meaning of N.C.G.S. § 97-2(6). *See, e.g., Moore v. Fed. Express*, 162 N.C. App. 292, 294, 298, 590 S.E.2d 461, 463-64, 465-66 (2004) (loading a box into a vehicle); *Whitfield v. Lab. Corp. of Am.*, 158 N.C. App. 341, 344, 352, 581 S.E.2d 778, 781, 785-86 (2003) (slipped on rainwater); *Ruffin v. Compass Grp. USA*, 150 N.C. App. 480, 481, 482-84, 563 S.E.2d 633, 635, 636-37 (2002) (pulled a forty-pound box of syrup out of truck); *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 769, 394 S.E.2d 191, 192 (1990) (helped carry a heavy spotlight backwards up a flight of stairs); *Kelly v. Carolina Components*, 86 N.C. App. 73, 76-77, 356 S.E.2d 367, 369 (1987) (carried a door on head while climbing down a ladder); *Bradley v. E.B. Sportswear, Inc.*, 77 N.C. App. 450, 451-52, 335 S.E.2d 52, 52-53 (1985) ("squatted down," preparing to lift box off floor). Further, the testimony of her physicians, Drs. Hodgson and Melin, that experiencing such an incident could in their opinions, to a reasonable degree of medical certainty, exacerbate and render her preexisting degenerative back condition symptomatic was sufficient to support a finding of a causal relationship between the work-related incident and her disabling back pain.

For the foregoing reasons I respectfully dissent in part and concur in part with the majority opinion.

Justice BRADY and Justice NEWBY join in this dissenting and concurring opinion.