IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1376

Filed: 5 July 2016

Wake County, No. 14 CVS 3890

CARON ASSOCIATES, INC., Plaintiff,

v.

SOUTHSIDE MANUFACTURING CORP. and CROWN FINANCIAL, LLC, Defendants.

Appeal by Defendant from an order entered 3 September 2015 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 11 May 2016.

*StephensonLaw, LLP, by Philip T. Gray, for Plaintiff-Appellee.*

*Boxley, Bolton, Garber & Haywood, L.L.P., by Ronald H. Garber, for Defendant-Appellant.*

HUNTER, JR., Robert N., Judge.

Crown Financial, LLC ("Crown"), appeals following an order awarding Caron Associates, Inc. ("Purchaser") summary judgment. On appeal Crown contends the trial court erred in awarding Purchaser summary judgment because Purchaser owes Crown money pursuant to an assignment. After careful review of the record, we affirm the trial court.

## I. Factual and Procedural Background

On 4 October 2013, Purchaser entered into a contract with Southside Manufacturing Corp. ("Cabinet Maker") to buy cabinetry for a construction project at Bertie County High School. Purchaser agreed to pay Cabinet Maker $103,500.00 for the cabinetry provided that Cabinet Maker deliver the cabinetry in "late November 2013." The parties agreed payment was due "within 30 days after delivery." After the parties executed the contract, "[Cabinet Maker] notified [Purchaser] the November 2013[] delivery date needed to be extended to December 18, 2013," and Purchaser agreed to the 18 December 2013 delivery date.

On 9 December 2013, Cabinet Maker sent Purchaser a "progress billing" invoice for incomplete cabinetry that it did not deliver. The next day, Purchaser told Cabinet Maker it would not accept invoices. Purchaser stated, "invoices are not sent until product is actually delivered. [Cabinet Maker] was to deliver . . . on December 18, 2013 and the [c]ontract terms called for [Purchaser] to make payment within 30 days after the delivery."

On 9 December 2013, Cabinet Maker assigned all of its accounts receivable to Crown. Crown is in the business of factoring, the business of buying accounts receivable at a discounted rate. Crown ran a credit check on Purchaser and agreed to purchase all of Cabinet Maker's accounts receivable for $33,750.00. The record does not disclose whether Crown failed to review the Purchaser-Cabinet Maker

contract, which states Purchaser's obligation to pay $103,500.00 is contingent upon Cabinet's Maker's timely delivery.

On 9 December 2013, Crown sent Purchaser an "Assignment of Receivables Letter." In the letter, Crown informed Purchaser that it is the assignee of Cabinet Maker's accounts receivable. The letter states the following in relevant part:

> This will inform you that [Cabinet Maker] has assigned all rights, title, and interest in its accounts receivable to Crown Financial, LLC ("Crown") effective today's date. All present and future payments due to [Cabinet Maker] need to be remitted to:
>
> > [Cabinet Maker] Manufacturing Corp.
> > c/o Crown Financial, LLC
> > P.O. Box 219330
> > Houston, Texas 77218
>
> Please confirm by signing below that these remittance instructions will not be changed without written instructions from both [Cabinet Maker] and "Crown." Also attached is Exhibit "A" which is a list of invoice(s) totaling $45,000.00 that we will be advancing on initially. Please confirm by signing below that these invoice(s) are in line for payment and the payment obligation of [Purchaser] is not subject to any offsets, back charges, or disputes of any kind or nature.
>
> In the future, we will be faxing additional Exhibit "A's" for your confirmation pursuant to these same terms and conditions.

On 11 December 2013, Purchaser signed the assignment letter underneath the language, "Accepted and acknowledged this 9th day of December 2013 by: Caron

Associates" and returned the letter to Crown. The record shows Cabinet Maker signed a copy of the letter separately and returned it to Crown.

Cabinet Maker bounced several checks and failed to deliver the cabinetry to Purchaser. On 8 January 2014, Crown emailed Purchaser and asked, "[J]ust following up to make sure that Cabinet Maker has delivered the finished product to the Bertie County High School and that there are no problems?" Purchaser responded to Crown and stated the following:

> Are you kidding me? [Cabinet Maker] is the biggest joke I have ever seen in my life. Not only did they not deliver but we have been given the run around for 3 weeks and found out today that the owner . . . has some previous legal issues, [Cabinet Maker] has been bouncing employee and vendor pay checks and all employees have been laid off. Not a good day.

Crown replied, "Thank you for the info. I was afraid that would be your answer. . . ."

On 12 February 2014, Crown sent Purchaser a demand letter for $45,000.00. Crown claimed Purchaser owed it $45,000.00 under the terms of the assignment letter.

On 27 March 2014, Purchaser filed a complaint against Cabinet Maker and Crown. Purchaser raised claims for breach of contract, negligent misrepresentation, and sought a declaratory judgment that it did not owe Crown $45,000.00. Purchaser filed an amended complaint on 28 April 2014 and raised the same claims.

On 28 May 2014, Crown filed an answer generally denying the allegations and raised counterclaims against Purchaser for breach of contract and detrimental reliance. Crown also raised a crossclaim against Cabinet Maker for $45,000.00.

On 23 June 2014, Purchaser moved for entry of default against Cabinet Maker. The Clerk of Wake County Superior Court entered default against Cabinet Maker on 24 June 2014. On 30 July 2014, Purchaser filed a response to Crown's counterclaims.

Discovery began on 4 February 2015 and Crown sent requests for admission to Purchaser. Purchaser responded to the requests on 10 June 2015.

On 11 August 2015, Purchaser moved for summary judgment pursuant to Rule 56. Purchaser attached an affidavit from its vice president, Peter Huffey, to its motion, along with other email exhibits. On the same day, Purchaser filed a motion for default judgment against Cabinet Maker.

On 21 August 2015, Crown moved for summary judgment pursuant to Rule 56. Crown attached an affidavit from its officer, Philip R. Tribe, to its motion, along with its assignment letter and Cabinet Maker's progress billing invoice for $45,000.00. Crown did not provide any evidence disputing the terms of the Purchaser-Cabinet Maker contract, or Cabinet Maker's failure to deliver. On 1 September 2015, the trial court entered default judgment against Cabinet Maker.

The trial court heard the parties on their motions for summary judgment on 1 September 2015. At the hearing, Purchaser stated the following:

> [T]he original delivery date was pushed back at the request of [Cabinet Maker], and that was no problem. . . . [A]nd right before the delivery date I guess [Cabinet Maker] was in financial straits and so independently [Cabinet Maker] contracted with [Crown] to factor basically interest it looks like their entire book of business. . . . And on an aside, the principals of [Cabinet Maker] are now sitting in federal prison for raiding the corporation. [Cabinet Maker] is defunct and there's been a whole lot of mess and a lot of other companies been [sic] injured . . . .

Crown's counsel conceded there was no genuine issue of material fact and stated, "Well I don't think there are any issues of fact because the affidavit in the file . . . ."

On 4 September 2015, the trial court granted Purchaser's motion for summary judgment, declared Purchaser had no duty or obligation to Crown, and denied Crown's motion for summary judgment. On 30 September 2015, Crown gave its notice of appeal. Thereafter, the parties settled the record on appeal and filed their appellate briefs.

**II. Standard of Review**

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) *(quoting Forbis v. Neal,* 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

**III. Analysis**

Crown contends the trial court erred in granting Purchaser summary judgment because Purchaser waived its defenses by signing the assignment letter. Further, Crown contends Purchaser is an account debtor under N.C. Gen. Stat. § 25-9-403 (2015). We disagree.

North Carolina law allows for an "[a]greement not to assert defenses against [an] assignee" under N.C. Gen. Stat. § 25-9-403 (2015). Section 25-9-403 sets out the following:

> [A]n agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:
>
> (1) For value;
>
> (2) In good faith;
>
> (3) Without notice of a claim of a property or possessory right to the property assigned; and
>
> (4) Without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under [N.C. Gen. Stat. §] 25-3-305(a).

*Id.* An account debtor is a "person obligated on an account, chattel paper, or general intangible." N.C. Gen. Stat. § 25-9-102(a)(3) (2015).

After careful review of the record, it appears there is no genuine issue of material fact surrounding the Purchaser-Cabinet Maker contract. The contract does not appear in the record but Purchaser's affidavit in support of its motion for

summary judgment shows that payment for the cabinets was due within thirty days of delivery. Therefore, Cabinet Maker's duty to deliver is a condition precedent to Purchaser's duty to pay the contract price. "A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance. The event may be largely within the control of the obligor or the obligee." *Powell v. City of Newton*, 364 N.C. 562, 566, 703 S.E.2d 723, 727 (2010) (citation omitted). The parties "are bound when the condition [precedent] is satisfied." *Id.* (citation omitted).

Crown does not dispute the terms of the Purchaser-Cabinet Maker contract. Crown does not dispute Cabinet Maker's failure to deliver the cabinets. Therefore, under these facts, Purchaser cannot be a "person *obligated*" because there is no evidence to suggest the condition precedent, Cabinet Maker's delivery, was satisfied. *See* N.C. Gen. Stat. § 25-9-102(a)(3) (2015) (emphasis added).

Further, the plain language of the assignment letter does not obligate Purchaser. It merely informs Purchaser that all present or future payments due to Cabinet Maker are due to Crown as Cabinet Maker's assignee. The letter references Cabinet Maker's premature invoice for $45,000.00, and states "[Crown] will be advancing on [the $45,000.00] initially." The letter states, "the payment obligation . . . is not subject to any offsets, back charges, or disputes of any kind or nature." This Court observes there is no record evidence that Crown gave Purchaser any

consideration in exchange for Purchaser's signature on the assignment letter. Therefore, the assignment letter in itself cannot be a contract.

As our Supreme Court has held, "it is well-settled principle" that when an assignee buys a chose in action "for value, in good faith, and before maturity," the assignee takes the action "subject to all defenses which the debtor may have had against the assignor based on facts existing at the time of the assignment or on facts arising thereafter but prior to the debtor's knowledge of the assignment." *William Iselin & Co. v. Saunders*, 231 N.C. 642, 646–47, 58 S.E.2d 614, 617 (1950) (citations omitted). Therefore, under these facts, Purchaser never incurred a duty to pay Cabinet Maker because Cabinet Maker failed to deliver. Without delivery, Crown is unable to compel Purchaser's payment.

Lastly, we review Crown's claim that it detrimentally relied on Purchaser's representations in the assignment letter. A "party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party." *Whiteacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 17, 591 S.E.2d 870, 881 (2004) (citations omitted). The doctrine of equitable estoppel prevents such a party from "taking inconsistent positions in the same or different judicial proceedings . . . to protect the integrity of the courts and the judicial process." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007) (internal quotation marks and citations omitted). To proceed

on an equitable estoppel claim, the claimant must provide a forecast of evidence showing "(1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Hawkins v. M & J Fin. Corp.*, 238 N.C. 174, 177–78, 77 S.E.2d 669, 672 (1953) (citations omitted). Here, Crown failed to provide a forecast of evidence showing that it lacked the knowledge and means to review the Purchaser-Cabinet Maker contract. In doing so, Crown failed to raise a genuine issue of material fact concerning its counterclaim for detrimental reliance.[1]

After careful *de novo* review of the record, we hold there is no genuine issue of material fact.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court.

AFFIRMED.

Judges CALABRIA and TYSON concurs.

---

[1] When "only one inference can reasonably be drawn from undisputed facts, the question of estoppel is one of law for the court to determine." *Hawkins*, 238 N.C. at 185, 77 S.E.2d at 677 (citations omitted). When the evidence "raises a permissible inference that the elements of equitable estoppel are present, but . . . other inferences may be drawn from contrary evidence, estoppel is a question of fact for the jury . . . ." *Creech v. Melnik*, 347 N.C. 520, 528, 495 S.E.2d 907, 913 (1998) (citation omitted).